**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEFFREY VIVERETTE,

       Petitioner,

v.                                                     CASE NO:  8:06-CV-386-T-30EAJ
                                         Crim. Case No: 8:01-CR-72-T-30EAJ

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

       THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) and the Government's Response (Dkt. #9) thereto.  The Court has reviewed the briefs of the parties and the previous criminal proceedings and determines that the motion should be denied.  Because the grounds raised in the motion are refuted by the record of the prior criminal proceeding, no evidentiary hearing is necessary.

### Background

       On July 16, 2001, Petitioner, Jeffrey Viverette (hereinafter referred to as "Viverette," "Defendant" or "Petitioner") executed a plea agreement (CR Dkt. #17) agreeing to plead guilty to Counts One and Four of the Indictment.  In return, the Government agreed to dismiss Counts Two, Three and Five.  Count One charged the Petitioner with distributing five or more grams of a mixture or substance containing a detectable amount of cocaine base,

in violation of 21 U.S.C. §841(a)(1) and Title 21 U.S.C. §841(b)(1)(B)(iii).  Count Four

charged the Petitioner with possessing with the intent to distribute five or more grams of a

mixture or substance containing a detectable amount of cocaine base, in violation of 21

U.S.C. §841(a)(1) and Title 21 U.S.C. §841(b)(1)(B)(iii).

Petitioner executed a written plea agreement on July 16, 2001, which in pertinent part,

contained the following provisions:

A.1.   Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and Four of the
Indictment.  Count One charges the defendant with distributing five or more
grams of a mixture or substance containing a detectable amount of cocaine
base, in violation of 21 U.S.C. §841(a)(1) and Title 21, Unites States Code,
Section 841(b)(1)(B)(iii).  Count Four charges the defendant with possessing
with the intent to distribute five or more grams of a mixture or substance
containing a detectable amount of cocaine base, in violation of 21 U.S.C.
§841(a)(1) and Title 21, United States Code, Section 841(b)(1)(B)(iii).

A.2.   Maximum Penalties

Count One and Four each carry a minimum mandatory sentence of 5
years to 40 years imprisonment, a fine of $2,000,000, a term of supervised
release of four years, and a special assessment of $100 per felony count
thereafter with said special assessment to be due on the date of sentencing.
With respect to certain offenses, the Court shall order the defendant to make
restitution to any victim of the offense(s), and with respect to other offenses,
the Court may order the defendant to make restitution to any victim of the
offense(s), or to the community, as set forth below.

A.3.   Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of
the offense(s) with which defendant has been charged and to which defendant
is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | That the Defendant distributed the cocaine base, as charged; and |
| Second: | That the Defendant did so knowingly and intentionally. |

The elements of Count Four are:

| | |
|---|---|
| First: | That the Defendant knowingly and willfully possessed cocaine base, as charged; and |
| Second: | That the Defendant possessed the substance with the intent to distribute it. |

A.4.   Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two, Three and Five, will be dismissed pursuant to Fed.R.Crim.P. 11(e)(1)(A).

B.4.   Sentencing Guidelines and Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.   The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances.   Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that, should any recommendations be rejected, and regardless of the guidelines calculated by

the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

### B.5. Appeal of Sentence: Waiver

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. §3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. §3742(a).

### B.8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against

compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

B.9.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt:

FACTS

On September 22, 2000, the defendant, in Hillsborough County, sold an undercover officer approximately 6.6 grams of cocaine base for $150.

On September 29, 2000, the defendant, in Hillsborough County, sold an undercover officer 48.5 grams of powder cocaine for $1,800.

On November 7, 2000, the defendant, in Hillsborough County, the defendant (sic) sold an undercover officer 27.2 grams of powder cocaine for $850.

On November 29, 2000, the defendant, in Hillsborough County, attempted to sell an undercover officer 49.9 grams of powder cocaine.  The defendant was arrested before he could complete the transaction.  A search incident to arrest of the defendant's car located an additional 11.1 grams of cocaine base.  The cocaine base was located in the defendant's front center console ashtray ready for distribution.

The drugs were tested by the DEA lab in Miami as being cocaine base and powder cocaine.

B.10.  Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Petitioner's first guilty plea hearing was held August 1, 2001.  At the hearing, Petitioner requested a continuance to allow for the testing of the substances for which he was charged.  He argued that he had only cocaine powder in his possession, no cocaine base. Magistrate Judge Jenkins granted his oral motion for continuance as well as his motion for testing of the substances.  The guilty plea hearing was reset for August 15, 2001.

On August 15, 2001, the Court received into evidence a lab report (CR Dkt. #26) showing the contested substances to be cocaine base.  Petitioner then proceeded to enter his guilty plea before Magistrate Judge Jenkins.  The Court questioned Petitioner extensively to establish that Petitioner's plea of guilty was entered knowingly and voluntarily.  In pertinent part, Judge Jenkins asked and received answers to the following questions:

THE COURT:  Now, you have a right to talk to your attorney at any time.  You have a right to have a private conference with your attorney and if at any time you decide you don't want to plead guilty, all you need to do is let me know and the hearing will be stopped, okay.

If you do plead guilty, however, and if your plea is accepted by the District Judge, at that point it becomes much more difficult, if not impossible, to change your mind.  Do you understand that?

THE DEFENDANT:        Yes, I do.

. . .

THE COURT: How far have you gone in school?

THE DEFENDANT: I graduated from twelfth grade.

THE COURT:   Okay.  Are you able to read, write and understand English?

THE DEFENDANT: Yes.

. . .

THE COURT:   Now, the charges that you're going to plead guilty to, according to Counts -- in the plea agreement are Counts One and Four.  Count One alleges that on or about September 22nd, 2000, in Hillsborough County, that you, the Defendant, knowingly and intentionally distributed five grams or more of cocaine base -- of a substance containing a detectible amount of cocaine base, also known as crack cocaine, in violation of Title 21 United States Code, Section 841(a)(1) and 841(b)(1)(b)(3).  Do you understand what that charge is about, sir?

THE DEFENDANT: Yes, I do.

THE COURT: Count Four alleges that on or about November 29th, 2000, in Hillsborough County, that you, the Defendant, knowingly and intentionally possessed with intent to distribute five grams or more of a mixture containing a detectible amount of cocaine base, also known as crack cocaine, in violation of the same statute.  Do you understand what that charge is about, sir?

THE DEFENDANT: Yes, I do.

THE COURT: Okay.  Now, the plea agreement states that you are going to plead guilty to those two counts and that at the time of sentencing, the Government will dismiss the remaining two counts -- the remaining three counts against you, excuse me, Counts Two, Three and Five.

Further, the United States agrees not to bring any additional charges against you, which arise out of this conduct discussed in the plea agreement.  Any questions about what I've said so far?

THE DEFENDANT: No.

THE COURT: The United States also agrees to go along with a request at sentencing that you receive a three level downward adjustment for acceptance of responsibility under the guidelines, as long as the Government doesn't have any reason to think that that recommendation is unwarranted at the time of sentencing.

It's important that you understand, sir, that whatever recommendations are made on your behalf at sentencing, whether by you, or your attorney or the Government, that none of those recommendations ever have to be followed by the Court and the Court would be free to accept or reject any recommendation made on your behalf at sentencing.   And if the Court didn't follow a recommendation you wanted the Court to follow, you could not change your mind about pleading guilty.  Do you understand that, sir?

THE DEFENDANT: Yes, I do.

. . .

THE COURT: Okay. Page 12 has a provision called Appeal of Sentence Waiver and under this part of your plea agreement it states that you understand that you are going to receive a sentence that is subject to the Federal Sentencing Guidelines and that you're also aware that such a sentence does not provide for parole.

This provision states that knowing these facts, the Defendant agrees that the Court may impose any sentence up to the statutory maximum penalty and gives up or waives the right to appeal Defendant's sentence either directly or indirectly on any ground, including the applicability of the safety valve decisions contained in the sentencing guidelines.

The only thing that may be appeal (sic) would be an upwards departure from the guidelines by the Judge or a sentence above the statutory maximum penalty, if that occurs, or a sentence which violates the law apart from the sentencing guidelines.

Now, if the Government exercises its right to appeal your sentence, then you're released from the waiver and may appeal the sentence as authorized. Do you feel that you understand this part of your plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: Even though you may be pleading guilty, Mr. Viverette, you may have a right to appeal your sentence if the Court violates the sentencing guidelines in imposing a sentence.  And we have no way of knowing whether that's going to happen, but you are being required in advance as part of your plea agreement with the Government, to give up your right to appeal your sentence on any issue other than those three things that we've talked about.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So that means you could not appeal your sentence on any sentencing guidelines issue unless the Court made an upwards departure. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay.  Do you make the waiver of appeal knowingly?

THE DEFENDANT: Yes.

THE COURT: And do you make it voluntarily?

THE DEFENDANT: Yes, I do.

THE COURT: Is there anything in this written plea agreement that you have any questions about whatsoever?

THE DEFENDANT: No questions, Your Honor.

THE COURT: Does this plea agreement contain all the promises or understandings that led you to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Is there anything anybody's promised you which is not in the written plea agreement?

THE DEFENDANT: No.

. . .

THE COURT: All right.  Let me turn now to the penalties.  Do you understand that a conviction under each of Counts One and Four carries a minimum mandatory sentence of five years?

THE DEFENDANT: Yes.

THE COURT: It also carries a maximum sentence of up to 40 years.  Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: It also carries a fine of up to $2 Million Dollars, a term of supervised release of four years and a special assessment of $100 per felony count due on the date of sentencing.  Do you understand that, sir?

THE DEFENDANT: Yes, I do.

THE COURT: Now, do you also understand that because you are pleading guilty to not one drug offense, but two, that the Court could impose what is known as consecutive sentences instead of what is known as concurrent sentences?  Do you understand what those are?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: All right.  Any questions about that?

THE DEFENDANT: No questions.

THE COURT: Let me explain supervised release to you.  If you are sentenced to jail, after you are released from jail, you would be subject to supervision by the Court and you would have to comply with certain conditions.  If you violated any one of those conditions, the Court could, after a hearing, order you back to jail for an additional period of time as a consequence of violating the supervised release.  Do you understand that?

THE DEFENDANT: Yes.

. . .

THE COURT: Is there any basis for sentence enhancement that the Government's aware of?

MR. CAMARENO: No, Your Honor.

THE COURT: All right.  Thank you.  Do you understand all these possible consequences of you plea, sir?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Now under the Sentencing Reform Act of 1984, the Sentencing Commission has issued guidelines that judges have to follow in determining the penalty in a case such as yours.  Have you and your attorney talked about how these guidelines might apply?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the Court cannot determine the guidelines sentence of your case until a later date after the Pre-Sentence Report has been completed and both you and your attorney, as well as the Government, have had a chance to make objections to anything in that report?

THE DEFENDANT: Yes.

THE COURT: At sentencing, the Judge will determine any objections to anything in the report, including any objections concerning the application of the guidelines.  Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: The guideline sentence chosen by Judge Moody, Mr. Viverette, could be different from any estimate or prediction about your sentence that anybody has given to you, including your attorney.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if the estimate or the prediction is wrong, you would still be bound by your guilty plea and could not withdraw it?

THE DEFENDANT: Yes, I do.

. . .

THE COURT: As you appear here today, has anyone promised you that if you plead guilty, you will not have to go to jail?

THE DEFENDANT: No.  No one has promised me that.

THE COURT: Has anyone promised you that if you plead guilty, that you will receive a specific sentence?

THE DEFENDANT: No, ma'am.

. . .

THE COURT: All right.  Now, if this case were to go to trial and in order to establish your plea of guilty, if you do plead guilty, the Government's undisputed evidence has to show the following: As to Count One, the Government has to show that you distribute (sic) cocaine base as charged in the amount of five grams or more and that you did that act knowingly and intentionally.

As to Count Four, the Government would have to establish that you knowingly and willfully possessed cocaine base as charged in the amount of five grams or more and, further, that you possessed the substance with the intent to distribute it.

Do you understand what those legal requirements are, sir?

THE DEFENDANT: Yes.

THE COURT: Okay.  I'm now going to ask Mr. Camareno, the prosecutor, to tell me the facts in support of the charge against, you, sir.  Please listen carefully, because then I'm going to ask you if you have any disagreement with any of those facts.

MR. CAMARENO: Thank you, Your Honor.  On September 22nd, 2000, the Defendant, in Hillsborough County, sold an undercover officer approximately 6.6 grams of cocaine base for $150.  On November 29th of 2000, the Defendant, in Hillsborough County, attempted to sell an undercover officer 49.9 grams of powder cocaine.  The Defendant was arrested before he could complete the transaction.  The Judge (sic) will testify that the DNA lab

in Miami as being cocaine base and powder cocaine, Your Honor.

THE COURT: Wait a minute.  Count One is September 22nd.  I heard about that.

MR. CAMARENO: Uh-hum.

THE COURT: Count Four is November 29th.

MR. CAMARENO: Okay.

THE COURT: I don't think I heard about that.

MR. CAMARENO: Okay.  I did recite that, Your Honor.

MR. MARTINEZ: It was on the second -- on the next page, Judge.

THE COURT: I'm sorry.  I thought I heard you say September 29th.

MR. CAMARENO: I apologize.  It was November 29th, Your Honor.

THE COURT: Okay.  In both cases it was five grams or more of cocaine base?

MR. CAMARENO: That's correct, Your Honor.

THE COURT: Okay.  All right.  Did you follow the facts stated by the Government?

THE DEFENDANT: Yes, I did.

THE COURT: All right.  Do you have any disagreement with any of those facts?

THE DEFENDANT: No, I don't.

THE COURT: Okay.  Are those facts true?

THE DEFENDANT: Yes.

THE COURT: And you are admitting then that Count One and Count four, that was crack cocaine, five grams or more?

THE DEFENDANT: Yes.

THE COURT: Okay. Having gotten to this point, Mr. Viverette, do you have any questions about the consequences of your plea or the rights you're giving up?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you ready to make this decision today?

THE DEFENDANT: Yes, I am.

THE COURT: How do you wish to plead to Count One of the Indictment?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And Count Four?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty, sir, because you are guilty?

THE DEFENDANT: Yes, I am.

THE COURT: Okay. I find that the Defendant's plea is knowing, intelligent and voluntary. I find that he is competent and I find that the plea is supported by independent basis and fact as to each essential element of the offense. I'm going to recommend to Judge Moody that you plea be accepted and that recommendation will be made in writing.

You have ten days from when it's made, sir, to make any objection. If you do not object, you could be limited in your right to later complain that the Court should not have accepted your guilty plea. Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

Judge Jenkins recommended to this Court that the guilty plea be accepted.   On September 5, 2001, this Court accepted Petitioner's guilty plea and adjudicated him guilty as to Counts One and Four.

Thereafter, Petitioner, who was free on bond, was charged with a separate offense or offenses in state Court.   He filed several motions for continuance of his sentencing on the federal charges, said motions being granted by this Court.   On May 19, 2004, when the Court finally convened for sentencing, Petitioner made a motion in open Court to withdraw his guilty plea.   On May 24, 2004, a written motion with a supporting memorandum was filed by Petitioner to withdraw his guilty plea (CR Dkt. #81) which was referred to Magistrate Jenkins for a Report and Recommendation.

In his motion, Petitioner contended that his plea was entered without close assistance of counsel and was not entered knowingly and voluntarily.   Further, he argued that neither the Court nor his counsel advised him about the application of the career offender enhancement under the United States Sentencing Commission Guidelines §4B1.1.   In support, he pointed to that portion of the plea colloquy between Defendant and the Magistrate Judge during his August 15, 2001, change of plea hearing:

> THE COURT:   Is there any basis for sentence enhancement that the Government is aware of?
>
> MR. CAMARENO: No, Your Honor.

Petitioner also argued that his attorney failed to inform him that his sentence was subject to the Career Offender enhancement.

On June 23, 2004, Judge Jenkins recommended (CR Dkt. #87) that the motion to withdraw the guilty plea be denied.  In part, Judge Jenkins based her recommendation on the following reasoning:

> As argued by the Government, Defendant fails to draw a distinction between statutory enhancements (which enhance the statutory maximum sentence) and the Career Offender enhancement contained in the Sentencing Guidelines (which increases incarceration time but does not affect the maximum sentence).   In this case, the Government did not seek the statutory enhancement found in 21 U.S.C. §851.  If the Government had decided to pursue that enhancement, notice to the Defendant would be required by statute. However, the enhancement currently in dispute is the Career Offender enhancement contained in the Sentencing Guidelines, a non-statutory enhancement which does not require notice to the Defendant.  (Footnote omitted).  Defendant's argument improperly equates the notice requirements of the statutory enhancements and the Career Offender enhancement.
>
> A Defendant cannot withdraw a plea of guilty due to confusion about, or dissatisfaction with, the application of the Sentencing Guidelines.  In United States v. Bradley, 905 F.2d 359, 360 (11th Cir. 1990), the Eleventh Circuit, commenting on a similar matter, instructed:
>
>> To the extent that [the defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the Court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed. (Footnote omitted).
>
> During the August 15, 2001 change of plea hearing, the court asked Defendant regarding the waiver of appeal provision: "So that means that you could not appeal your sentence on any sentencing guidelines issues unless the Court made an upwards departure.  Do you understand that?"  (Dkt. 39 at 13). Defendant replied: "Yes, I do."  (Id.).
>
> Further, the court asked Defendant: "Now under the Sentencing Reform Act of 1984, the Sentencing Commission has issued guidelines that judges have to follow in determining the penalty in a case such as yours.  Have you and your

attorney talked about how these guidelines might apply?"   (Id. at 16).
Defendant replied: "Yes."  (Id.).

In addition, the court asked Defendant: "Do you understand that if the estimate
or the prediction [of your sentence] is wrong, you would still be bound by your
guilty plea and could not withdraw it?"  (Id. at 17).  Defendant replied: "Yes,
I do."  (Id.)

"[I]f the Rule 11 plea taking is careful and detailed, the defendant will not later
be heard to contend that he swore falsely."  United States v. Stitzer, 785 F.2d
1506, 1514 n.4 (11th Cir. 1986), cert. denied, 479 U.S. 823 (1986).  The sworn
statements of a defendant made during a plea colloquy are presumed to be true
and accurate.  Gonzalez-Mercado, 808 F.2d at 800 n.8.

Further, the Court in Blackledge v. Allison, 431 U.S. 63, 74 (1977) stated,
"Solemn declarations in open court carry a strong presumption of verity.  The
subsequent presentation of conclusory allegations unsupported by specifics is
subject to summary dismissal, as are contentions that in the face of the record
are wholly incredible."

Defendant acknowledged in his plea agreement that he was completely
satisfied with his counsel's representation (Dkt. 17 at 13) and similarly
affirmed his satisfaction with defense counsel during his initial change of plea
hearing held on August 1, 2001 (Dkt. 78 at 8).  In addition, as argued by the
Government, the record demonstrates that Defendant received close assistance
of counsel:    Defense counsel negotiated a favorable plea agreement for
Defendant, arranged for independent laboratory testing of the substance upon
which Defendant's charges were based, attended two change of plea hearings
for Defendant, and last, persuaded the court to place the Defendant on bond.

B.      Knowing and Voluntary Plea

Defendant contends that his plea was not entered knowingly and voluntarily
because he was not aware that the Career Offender enhancement could be
applied to lengthen his sentence.

Evaluating the voluntary nature of a defendant's guilty plea, the Eleventh
Circuit held, "When the defendant is informed of a mandatory minimum and
maximum **statutory** sentence at his plea colloquy and sentenced within that
range, we have determined that the failure to advise of a **Sentencing
Guidelines** sentencing range is harmless error, as long as the defendant knew

that the Sentencing Guidelines existed and that they would affect his sentence." United States v. Tyndale, 209 F.3d 1292, 1294 (11th Cir. 2000) (emphasis in original)(citing United States v. Mosley, 173 F.3d 1318, 1327-1328 (11th Cir. 1999) and United States v. Casallas, 59 F.3d 1173, 1180 (11th cir. 1995)). Although Casallas and its progeny discuss habeas relief, the Eleventh Circuit's stance is pertinent to the present situation where the Defendant seeks to withdraw a plea entered pursuant to Rule 11, Fed.R.Crim.P., prior to sentencing.

The court also finds instructive the aforementioned Second Circuit case: Sweeney, 878 F.2d at 68. The defendant in Sweeney argued that his plea was not entered into knowingly and voluntarily because the defendant based his decision to plead guilty on his attorney's improper estimate of the defendant's sentence under the Guidelines. Id. at 69. In Sweeney, the court denied the defendant's motion to withdraw his guilty plea finding, inter alia, that the defendant was aware of the maximum sentence that he faced and that his sentence was to be determined by the District Judge, operating within his full discretion. Id. at 69-70. The Sweeney court also found relevant defendant's acknowledgment that "no promises had been made regarding his ultimate sentence." Id. at 70.

As in Sweeney, Defendant in the present case understood the maximum sentence that he faced at the time of his change of plea hearing and also acknowledged that neither threat nor improper promise influenced his decision to enter a plea of guilty." (Footnote omitted). He acknowledged at the change of plea hearing the elements of, and possible penalties for, each offense and agreed upon the factual basis as stated by the Government (Dkt. 39 at 15, 24). Further, Defendant admitted that the substance involved in counts one and four was five or more grams of crack cocaine (Id. at 21). Lastly, when the undersigned asked Defendant whether he had any questions about the consequences of his plea, the Defendant answered "No." (Id. at 22).

On July 12, 2004, this Court adopted and approved the Report and Recommendation of

Magistrate Jenkins denying the motion to withdraw guilty plea. A sentencing hearing was

held on August 11, 2004, and written judgment entered on August 12, 2004, sentencing

Petitioner to a total of 235 months imprisonment followed by sixty months supervised

release. The sentence was imposed to run consecutively to Petitioner's state term of

imprisonment.  Petitioner filed a timely notice of appeal and his sentence was affirmed by the Eleventh Circuit Court of Appeals on May 17, 2005.  He now has timely filed this motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255.  He asserts the following grounds in support of his motion:

Ground One:        Ineffective assistance of counsel - counsel was ineffective for misadvising the Defendant about the Sentencing Guidelines.

Ground Two:        Ineffective assistance of counsel - counsel was ineffective for not bringing in the detective property room report slips and drugs as documentary evidence.

Ground Three:      Ineffective assistance of appellate counsel - counsel was ineffective for abandonment of the Blakely issue in Defendant's appeal brief.

Ground Four:       Constitutional error - under United States v. Booker which violated the Defendant's Fifth, Sixth and Fourteenth Amendments of the U. S. Constitution.


**Discussion**

Ground One:        Ineffective assistance of counsel - counsel was ineffective for misadvising the Defendant about the Sentencing Guidelines.

In support of Ground One, Petitioner argues that his attorney, Victor Martinez, failed to correctly apply the Sentencing Guidelines in advising him to plead guilty.  He claims that he was advised by Martinez that he scored out to a level 26 criminal history, category five, minus three levels for acceptance of responsibility, for a guideline range of 84 - 105 months.  He asserts that had he known that the Career Offender enhancement under the guideline would have added 151 months to his sentence, he would not have pled guilty.

Page 19 of  24

Ground One fails both because it lacks merit and because it was waived in his plea agreement.  This is the same argument Petitioner made in his motion to withdraw his guilty plea and it was rejected on its merits.  He does not contend that the Career Offender enhancement was not properly applied under the guidelines, he contends only that he did not know how the guidelines would finally be calculated after the presentence report was prepared.  This possibility was explained to him by the Magistrate Judge in accepting his guilty plea.  The Magistrate Judge recommended, and this Court agreed, that he would not be allowed to withdraw his guilty plea under those circumstances.  The reasons for that are clearly set out in the Magistrate's Report and Recommendation cited in the Background section of this opinion and need not be repeated here.  Suffice it to say that this argument, once again, fails on the merits.

Additionally, Petitioner has waived this argument.  His complaint is essentially with the calculation of the Sentencing Guidelines, a complaint that he waived in paragraph B.5 of his plea agreement.  See United States v. Grinard-Henry, 399 F.3d 1294 (11th Cir.).  Petitioner seeks to circumvent this waiver by recasting this argument as an ineffective assistance of counsel claim.  While it is true that the appeal waiver does not include ineffective assistance of counsel claims, such claims are not viable where they are merely an attempt to relitigate an issue that has failed in a different context.  Even if the argument were considered as an ineffective assistance of counsel claim, it would fail because there is no prejudice.  Petitioner was specifically advised by the Magistrate Judge at his plea hearing that the calculation under the Sentencing Guidelines might very well be greater than the range

told to him by his counsel.  He was asked if he still wished to plead guilty under those circumstances and he replied "yes."  He cannot now be heard to claim that he would have done otherwise.

For the foregoing reasons, Ground One will be denied.

Ground Two:              Ineffective assistance of counsel - counsel was ineffective for not bringing in the detective property room report slips and drugs as documentary evidence.

In support of Ground Two, Petitioner asserts:

Counsel Mark O'Brien was ineffective for not bringing in the detective property room slips and the cocaine from the property room that he wrote down cocaine and not crack cocaine during defendant's sentencing hearing. If brought in, it would have shown the judge that the detective never said that he received crack cocaine (cocaine base) from the defendant.  This evidence would have rebutted the detective's statement that the defendant sold him crack cocaine.

This argument fails because Petitioner's counsel was not ineffective.  His counsel asked for and received a two week continuance so that the substance the officer claimed to be crack cocaine could be tested by a lab.  The Court granted the continuance, the substance was tested, and the lab report verified that it was in fact cocaine base.  It would not have mattered what the property room slip said or what the substance looked like to the judge had it been brought into Court.  The lab report was controlling on this issue.  After the lab report was entered into evidence, Petitioner agreed to go forward with his guilty plea.

Because counsel's performance was not deficient, Ground Two fails.  See Strickland v. Washington, 466 U.S. 668 (1984).

<u>Ground Three:</u>      Ineffective assistance of appellate counsel - counsel was ineffective for abandonment of the <u>Blakely</u> issue in Defendant's appeal brief.

In support of Ground Three, Petitioner argues that his counsel was ineffective because he failed to include a <u>Blakely</u>/<u>Booker</u>[1] argument on direct appeal.  Petitioner contends that, since <u>Booker</u> became effective on January 12, 2005, during the pendency of his appeal, its application would have rendered his sentence "unreasonable."  And, he claims, "there is a reasonable probability that the defendant's sentencing outcome would have been different" because "the appeal courts could have remand (sic) the defendant for resentencing and defendant could have received a lighter sentence." (Page 7A of Motion).  Ground Three fails because the <u>Blakely</u>/<u>Booker</u> argument was waived by Petitioner's plea agreement and counsel's performance was neither deficient nor prejudicial for failing to raise it.

The Court initially notes that Petitioner did not make a <u>Blakely</u>/<u>Booker</u> argument at sentencing.  But assuming arguendo that such an argument had been made, Petitioner's plea agreement waived the right to make the argument on direct appeal.  The Eleventh Circuit has previously held that an appeal waiver like his precludes a defendant from making a <u>Booker</u> argument on appeal.  <u>See</u> <u>United States v. Grinard-Henry</u>, 399 F.3d 1294 (11th Cir.), <u>cert. denied</u>, 544 U.S. 1041 (2005).  Further, Petitioner's complaint is with his sentence being enhanced by the Career Offender provisions of the Sentencing Guidelines.  These provisions are based on a defendant's criminal history.  It is not <u>Booker</u> error for a sentencing court to

---

[1] The <u>Blakely</u>/<u>Booker</u> argument comes from the reasoning in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005).

rely on the facts of prior convictions in sentencing a defendant.  United States v. Shelton, 400

F.3d 1325 (11th Cir. 2005) (court did not err when it enhanced defendant's sentence based

on a judicial fact-finding of prior convictions).  It is not deficient performance for appellate

counsel not to raise issues that have no merit.

 For these reasons, Ground Three will be denied.

Ground Four:  Constitutional error - under United States v. Booker which violated the
        Defendant's Fifth, Sixth and Fourteenth Amendments of the U. S.
        Constitution.

 In support of Ground Four, Petitioner argues that Blakely applies to the Sentencing

Guidelines and that constitutional error was committed when the sentencing Court used

"extra verdict" enhancements to reach his guidelines result.  This argument fails.  As

explained above, it is not Blakely/Booker error for a sentencing Court to rely upon the fact

of prior criminal convictions in determining an appropriate guideline sentence.  And, there

is no requirement that the fact of prior convictions be alleged in the Indictment and proven

to a jury.  United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005).  Ground Four will be

denied.

## **Conclusion**

 Because none of the grounds raised by Petitioner have merit, the motion to vacate will

be denied.  It is therefore ORDERED AND ADJUDGED that:

 1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28

U.S.C. §2255 (CV Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3.      The Clerk is directed to terminate from pending status the motion to vacate found at Dkt.#111, in the underlying criminal case, case number 8:01-cr-72-T-30EAJ.

**DONE** and **ORDERED** in Tampa, Florida on September 6, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2006\06-cv-386.deny 2255.wpd